| | | |
|---|---|---|
| MICHAEL BACHELDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:17-cv-00454-JAW |
| | ) | |
| MJJM ENTERPRISES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff alleges a defendant engaged in employment discrimination when it refused to hire to him as a hairstylist due to his epilepsy, a per se medical disability under the Maine Human Rights Act (MHRA). Because the plaintiff produced sufficient evidence to create a genuine issue of material fact as to whether the defendant engaged in disability discrimination, the Court denies the defendant's motion for summary judgment.

I.      **PROCEDURAL HISTORY**

On October 24, 2017, Michael Bachelder filed a complaint in Androscoggin County Superior Court against "SuperCuts, Inc.," asserting that it violated the MHRA when it refused to hire him allegedly due to his asserted medical disability. *Notice of Removal*, Attach. 1 *Compl.* (ECF No. 1) (*Compl.*). On November 17, 2017, MjjM Enterprises, d/b/a Supercuts, filed a notice of removal from Androscoggin

County Superior Court to this Court. *Notice of Removal.*[1,2]

On August 3, 2018, MjjM Enterprises filed a motion for summary judgment along with a statement of material facts. *Def.'s Mot. for Summ. J.* (ECF No. 28) (*Def.'s Mot.*); *Def.'s Statement of Uncontested Material Facts in Support of its Mot. for Partial Summ. J.* (ECF No. 29) (DSMF). On September 7, 2018, Mr. Bachelder filed his response to MjjM Enterprises' motion for summary judgment and statement of material facts, the latter of which contained his statement of additional material facts. *Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J.* (ECF No. 34) (*Pl.'s Opp'n*); *Pl.'s Resp. to Def.'s Statement of Material Facts and Pl.'s Additional Statement of Material Facts* (ECF No. 33) (PRDSMF) (PASMF). MjjM Enterprises filed its reply on September 21, 2018, and its reply to Mr. Bachelder's statement of additional facts on September 25, 2018. *Def.'s Reply to Pl.'s Opp'n to Def's Mot. for Summ. J.* (ECF No. 37) (*Def.'s Reply*); *Def.'s Resp. to Pl.'s Additional Statement of Material Facts* (ECF No. 39) (DRPASMF). On February 8, 2019, the Court held oral argument seeking to clarify the pending motion for summary judgment. *Min. Entry* (ECF No. 43). During oral argument, the Court invited counsel to file supplemental memoranda on two issues: (1) whether the temporal link between protected activity and adverse employment action is evidence of discriminatory motive in the employment application context, and (2) whether the Court may consider pretext in evaluating

---

[1]  On December 12, 2017, MjjM Enterprises filed a duplicate record of the state court docket in the present action before removal. (ECF No. 14).

[2]  On November 29, 2017, Mr. Bachelder filed an unopposed motion to amend his Complaint to correct the name of the Defendant. *Pl.'s Unopposed Mot. to File Am. Compl.*, at 2 (ECF No 11). On November 30, 2017, the Court granted Mr. Bachelder's motion, and on that same day, Mr. Bachelder filed an amended complaint. *Order* (ECF No. 13); *Pl.'s Am. Compl.* (ECF No. 12) (*Am. Compl.*).

whether the employee sustained a prima facie burden. Mr. Bachelder filed a supplemental memorandum of law on February 12, 2019, *Pl.'s Suppl. Mem. of Law in Opp'n to Def.'s Mot. for Summ. J.* (ECF No. 46) (*Pl.'s Suppl. Mem.*), and MjjM Enterprises filed a responsive memorandum on February 14, 2019, addressing only the first issue. *Def.'s Resp. to Pl.'s Suppl. Mem. of Law in Opp'n to Def.'s Mot. for Summ. J.* (ECF No. 48) (*Def.'s Suppl. Opp'n*).

## II.  STATEMENT OF FACTS[3]

### A.  Mr. Bachelder's Background

Mr. Bachelder is forty-seven years old, married, and has a GED high school diploma. PASMF ¶ 1; DRPASMF ¶ 1. Mr. Bachelder has epilepsy which has caused him to experience seizures for which he has been on medication for the past twenty years. PASMF ¶ 2; DRPASMF ¶ 2.[4] Mr. Bachelder was told by a neurologist that years of taking the seizure medication could damage his teeth. PASMF ¶ 3; DRPASMF ¶ 3; DSMF ¶ 15; PRDSMF ¶ 15.[5] Mr. Bachelder did not address with his

---

[3]     In accordance with "conventional summary judgment praxis," the Court recounts the facts in the light most favorable to Mr. Bachelder's theory of the case consistent with record support. *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002). The Court recites certain events as facts even though MjjM Enterprises disputes them.

[4]     Mr. Bachelder's paragraph two states: "Bachelder has epilepsy which [has] cause[d] him to experience seizures for the past twenty years for which he takes medicine." PSAMF ¶ 2. MjjM Enterprises qualifies Mr. Bachelder's statement that he has suffered seizures for twenty years in that he testified that he has taken anti-seizure medications, not that he has experienced seizures for twenty years. DRPASMF ¶ 2. The record discloses that Mr. Bachelder has been taking Depakote for seizures for the last twenty years, but it does not confirm that he experienced seizures uncontrolled by the Depakote over the last twenty years. The Court slightly amended Mr. Bachelder's proposed paragraph two to reflect the cited record.

[5]     Mr. Bachelder's paragraph three states: "The years of taking the seizure medication [have] caused damage[] to his teeth." PSAMF ¶ 3. MjjM Enterprises denies Mr. Bachelder's statement on the ground that Mr. Bachelder was only told that the medication could damage his teeth and there is no evidence that Depakote actually caused Mr. Bachelder's tooth problems. DRPASMF ¶ 3. To support his paragraph, Mr. Bachelder cites pages twenty-six and seventy-six of his deposition. PSAMF ¶ 3. Page twenty-six of Mr. Bachelder's deposition refers to his bottom teeth and medication:

dentist or subsequent doctors whether the damage to his teeth was actually caused by his seizure medication.  DSMF ¶ 15; PRDSMF ¶ 15.[6]  Previously, in January of 2008, Mr. Bachelder was approved for social security disability benefits.  PASMF ¶ 4; DRPASMF ¶ 4.

## B.  Empire Beauty School

In 2014, Mr. Bachelder decided to attend Empire Beauty School to become a

---

When I talked to Tracy at the first and second interview, she had talked about my teeth, my bottom teeth, which I knew were not the greatest because of many years of the medication I was on . . ..

DSMF, Attach. 1, *Dep. of Michael Bachelder* 26:14-17 (ECF No. 29).  On page seventy-six, there is the following interchange:

Q. And was there any - - we talked earlier about your bottom teeth having decay of the enamel.  Did any - - has any doctor told you that was a result of the medication?
A. My original neurologist I had after my accident with my seizures started had told me that over time, it could deteriorate the teeth.
Q. So once they actually started deteriorating, did another doctor tell you that was the cause of it?
A. No, I had never brought it up again.  I didn't think it was an issue.
Q. Did your dentist ever address it with you?
A. No.

*Id.* 76:12-23.
　　The Court agrees that the cited testimony supports only the proposition that Mr. Bachelder was told that Depakote could cause tooth problems, not that Depakote did cause the problems with his lower teeth.  The Court modified the statement to hew more closely to Mr. Bachelder's deposition testimony.
[6]　　MjjM Enterprises asserts "[t]hough the Plaintiff was informed by his 'original neurologist' that medications to treat his seizure disorder, could, over time, deteriorate his teeth, the Plaintiff has never been told by either a doctor or a dentist that the deterioration and discoloration of his bottom teeth was actually due to medication for his seizures."  DSMF ¶ 15.  Mr. Bachelder admits his doctor told him the seizure mediation could deteriorate his teeth, and that he understood that years of taking seizure medication caused damage to his teeth.  PRDSMF ¶ 15.  Mr. Bachelder denies the rest of MjjM Enterprises' assertion.  *Id.*  He says the citation provided by MjjM Enterprises only supports the allegation that a second doctor did not opine that the damage to Mr. Bachelder's teeth were caused by his medication, not that he has never been told by "either a dentist or a doctor that the deterioration and discoloration of his bottom teeth was actually due to his medication for seizures."  *Id.*
　　MjjM Enterprises is correct that Mr. Bachelder does say that he was never told that his medication was the actual cause for the poor condition of his teeth by his dentist or another doctor.  The record, therefore, supports MjjM Enterprises' assertion, and the Court rejects Mr. Bachelder's denial.  However, because the Court must draw all reasonable inferences in favor of the nonmovant, the Court includes Mr. Bachelder stating he never brought it up again to other doctors or his dentist after being told about his medication's possible side effects to provide context for his answer.

4

hair stylist; he began its program in the end of January 2015.  PASMF ¶ 5; DRPASMF ¶ 5; DSMF ¶ 1; PRDSMF ¶ 1.  Empire Beauty School is an eleven-month course, which requires 1,500 hours of hairstyling.  PASMF ¶ 6; DRPASMF ¶ 6.  Empire Beauty School's tuition is between $20,000 and $21,000.  PASMF ¶ 7; DRPASMF ¶ 7.[7]  Empire Beauty School has a dress code requiring students dress professionally, so Mr. Bachelder wore dress pants, a collared shirt, and Oxford shoes while at Empire Beauty School.  PASMF ¶¶ 8-9; DRPASMF ¶¶ 8-9.  Mr. Bachelder graduated from Empire Beauty School in March 2016.  PASMF ¶ 10; DRPASMF ¶ 10; DSMF ¶ 1; PRDSMF ¶ 1.

In April 2016, Mr. Bachelder took his State Boards which consisted of doing a haircut, hair color, chemical straightening and general cosmetology information, which he passed, and he received his barbering and cosmetology license.  PASMF ¶¶ 11-12; DRPASMF ¶¶ 11-12; DSMF ¶ 2; PRDSMF ¶ 2.  An instructor at Empire Beauty School recommended that Mr. Bachelder contact Tracy Johansen at Supercuts for potential employment.  PASMF ¶ 13; DRPASMF ¶ 13.

### C.    First Supercuts Interview

In July of 2016, Mr. Bachelder contacted the Lewiston Supercuts and spoke to Ms. Johansen, the manager of that location, about an interview for a stylist position.  PASMF ¶ 14; DRPASMF ¶ 14; DSMF ¶ 3; PRDSMF ¶ 3.  The day before Mr.

---

[7]    Mr. Bachelder stated that Empire Beauty School charged $21,000 for tuition.  PASMF ¶ 7.  MjjM Enterprises qualifies this statement in that Mr. Bachelder testified that the tuition was between $20,000 and $21,000 at Empire Beauty School.  DRPASMF ¶ 7 (citing *Bachelder Dep.* 19); *see id.* 19:9-12 ("Q. How much was the tuition for Empire? A. I don't remember the exact number, but it was between 20,000 and 21,000.  I don't remember exactly").  The Court modifies the statement to conform with Mr. Bachelder's deposition testimony.

Bachelder was supposed to interview with Ms. Johansen, he suffered a seizure. DSMF ¶ 4; PRDSMF ¶ 4; PASMF ¶ 15; DRPASMF ¶ 15. Mr. Bachelder's wife called and informed Supercuts that Mr. Bachelder had a medical issue and that he would have to reschedule the interview. DSMF ¶ 5; PRDSMF ¶ 5. Mr. Bachelder also later contacted Ms. Johansen and explained that he had suffered a seizure. DSMF ¶ 6; PRDSMF ¶ 6. Over the next three weeks, Mr. Bachelder kept in contact with Ms. Johansen as he began to feel better. PASMF ¶ 16; DRPASMF ¶ 16. Ms. Johansen agreed to reschedule Mr. Bachelder's interview. DSMF ¶ 7; PRDSMF ¶ 7.

On August 18, 2016, Mr. Bachelder filled out an employment application at Supercuts, and Ms. Johansen interviewed him that same day in her office at the Lewiston Supercuts location. DSMF ¶ 8; PRDSMF ¶ 8; PASMF ¶¶ 17, 20-21; DRPASMF ¶¶ 17, 20-21. Mr. Bachelder wore Oxford dress shoes, dress pants, and a dress shirt, as he had done at Empire Beauty School. PASMF ¶ 18; DRPASMF ¶ 18.[8] At this interview, Ms. Johansen discussed the general requirements of the stylist position and the general appearance MjjM Enterprises expected of its stylists. DSMF ¶ 17; PRDSMF ¶ 17. MjjM Enterprises has personal appearance guidelines for its employees. *Id.* During the interview, Ms. Johansen expressed concern about the appearance of the Mr. Bachelder's bottom teeth. DSMF ¶ 16; PRDSMF ¶ 16. At that time, Mr. Bachelder's bottom teeth were not in good condition in that they were

---

[8]     MjjM Enterprises denies Mr. Bachelder's statement that he wore a dress shirt, dress pants, and dress shoes, and asserts that he wore ill-fitting pants to the first interview. DRPASMF ¶ 18. There is a genuine dispute about how Mr. Bachelder dressed for his first interview at Supercuts. As the Court is required to view the facts in the light most favorable to Mr. Bachelder, the Court adopts his version for purposes of the summary judgment motion. *See supra* footnote three.

discolored, rotten, and the enamel was breaking down. DSMF ¶ 13; PRDSMF ¶ 13; PASMF ¶ 19; DRPASMF ¶ 19.[9]

Mr. Bachelder planned to have his bottom teeth removed. DSMF ¶ 14; PRDSMF ¶ 14. Mr. Bachelder also did not have any upper teeth; they had been removed due to damage he suffered from a 1994 motor vehicle accident. DSMF ¶ 11, PRDSMF ¶ 11. Mr. Bachelder has dentures but did not wear them to the interview; he generally does not wear them as they are ill-fitting, and he suffers from a gag reflex. DSMF ¶ 12, PRDSMF ¶ 12.

Mr. Bachelder told Ms. Johansen of his history of his seizures and that he suffered from epilepsy. PASMF ¶¶ 22-24; DRPASMF ¶¶ 22-24; DSMF ¶ 9; PRDSMF ¶ 9. Ms. Johansen stated she has the same condition as Mr. Bachelder and she suffers from seizures. DSMF ¶ 9; PRDSMF ¶ 9. Ms. Johansen told Mr. Bachelder of the need to work at different stores. PASMF ¶ 25; DRPASMF ¶ 25. Mr. Bachelder told Ms. Johansen he was not able to drive because of his seizures. PASMF ¶ 26; DRPASMF ¶ 26.

Mr. Bachelder and Ms. Johansen also discussed the poor condition of Mr. Bachelder's teeth. PASMF ¶ 27; DRPASMF ¶ 27. A couple days after the interview, Ms. Johansen called Mr. Bachelder back to set up a second interview during which he would do a haircut. DSMF ¶ 18; PRDSMF ¶ 18; PASMF ¶ 28; DRPASMF ¶ 28.[10]

---

[9]     Mr. Bachelder asserts that "[a]t that time, [his] bottom teeth were not in good condition because of the many years of taking seizure medication." PASMF ¶ 19. MjjM Enterprises qualifies this assertion in that in admits that Mr. Bachelder's teeth were rotten and discolored but denies that there is evidence that his medication led to these effects. The Court modifies the assertion in light of the record. *See supra* footnote four.

[10]     MjjM Enterprises qualifies Mr. Bachelder's assertion that Ms. Johansen called Mr. Bachelder to set up a second interview in which he would do a haircut. DRPASMF ¶ 28. MjjM Enterprises

### D. Second Supercuts Interview

The second interview took place on or about August 24, 2016. DSMF ¶ 19; PRDSMF ¶ 19. Mr. Bachelder wore his Oxford shoes, dress pants and a dress shirt. PASMF ¶¶ 29-30; DRPASMF ¶¶ 29-30.[11] As with his first interview, Mr. Bachelder understood the need to dress professionally and did so. PASMF ¶ 31; DRPASMF ¶ 31. Mr. Bachelder performed the haircut demonstration on his stepson, Vincent Self. DSMF ¶ 19; PRDSMF ¶ 19; *Index for Pl.'s Suppl. R. in Supp. of Pl.'s Resp. to Def.'s Mots. for Summ. J.*, Attach. 1 (ECF No. 32-1) (*Self Dep.*).[12] Ms. Johansen was impressed with the haircut Mr. Bachelder performed. PASMF ¶ 32; DRPASMF ¶ 32. After Mr. Bachelder completed the haircut, Ms. Johansen came over and told him that she was impressed with his skills, that she was happy with the haircut, and considering Mr. Bachelder did the hard part on his stepson, that she was impressed with how it came out. PASMF ¶ 33; DRPASMF ¶ 33. She made the same comments to Mr. Bachelder's stepson. PASMF ¶ 33; DRPASMF ¶ 33. Mr. Bachelder thought everything was good at that point. PASMF ¶ 33; DRPASMF ¶ 33.

Mr. Self testified that Mr. Bachelder wore dress pants and a nice dress shirt to

---

asserts it "admits the Plaintiff testified that he [and] Ms. Johansen spoke about the poor condition of Plaintiff's teeth, but that Ms. Johansen does not recall such a discussion." *Id.* This qualification fails to directly respond Mr. Bachelder's statement and the Court rejects it.

[11]     In paragraph thirty of Defendant's Response to Plaintiff's Additional Statement of Material Facts, MjjM Enterprises qualifies Mr. Bachelder's assertion that he did not wear jeans or sneakers to either interview with Supercuts. DRPASMF ¶ 30. However, MjjM Enterprises admits in Paragraph twenty-nine of its response that Mr. Bachelder wore his Oxford shoes. Apart from this contradiction, there is a genuine dispute of material fact as to what type of shoes Mr. Bachelder wore to his Supercuts interviews, and the Court adopts Mr. Bachelder's version at for purposes of the summary judgment motion. *See supra* footnote three.

[12]     For clarity, the Court refers to Mr. Self's deposition because Defendant's Statement of Material Facts paragraph nineteen says that he performed the demonstration on his stepson but does not identify the name of Mr. Bachelder's stepson. As the name of Mr. Bachelder's stepson is a matter of record, the Court added it.

the interview, that his hair was nice, and that he wore the shoes he had worn to his deposition. PASMF ¶ 34; DRPASMF ¶ 34. Mr. Bachelder and Ms. Johansen went to her office where they discussed Mr. Bachelder's seizures, tattoos, and body piercing just to make sure it was not going to be a problem. PASMF ¶ 35; DRPASMF ¶ 35; DSMF ¶ 20; PRDSMF ¶ 20. Ms. Johansen told Mr. Bachelder that it would not be a problem. PASMF ¶ 36; DRPASMF ¶ 36; DSMF ¶ 20; PRDSMF ¶ 20.[13] They also discussed the appearance of Mr. Bachelder's teeth, and Mr. Bachelder stated that he was looking into having his bottom teeth removed. DSMF ¶ 21; PRDSMF ¶ 22.

Ms. Johansen told Mr. Bachelder that she would speak to her supervisor and contact him. PASMF ¶ 37; DRPASMF ¶ 37; DSMF ¶ 22; PRDSMF ¶ 22. A couple of hours later, Ms. Johansen called Mr. Bachelder and they discussed the issue with his bottom teeth. DSMF ¶ 23; PRDSMF ¶ 23. Mr. Bachelder stated he understood the importance of a professional appearance for work in that he understood "having an appearance like that has a lot to do with clients, you know, to look professional." DSMF ¶ 23; PRDSMF ¶ 23.

Ms. Johansen informed him of the MjjM Enterprises' decision not to hire him. PASMF ¶ 38; DRPASMF ¶ 38.[14] Ms. Johansen told Mr. Bachelder that her boss did

---

[13] In his paragraph thirty-three, Mr. Bachelder states that Ms. Johansen told him that his tattoos and body piercings would not be a problem because they would be covered up. PASMF ¶ 36. MjjM Enterprises qualifies Mr. Bachelder's assertion on the ground that it is without record support. DRPASMF ¶ 36. The Court examined the cited portion of Mr. Bachelder's deposition transcript and agrees that he did not testify in the cited portion that Mr. Johansen told him the tattoos and piercings would not be a problem because they would be covered up. The Court modifies the assertion to conform with the record. *See supra* footnote four.

[14] Mr. Bachelder's paragraph thirty-eight states: "A couple of hours later, Johansen called Bachelder to inform him of the MjjM Enterprises' decision not to hire him." PASMF ¶ 38.

Citing page thirty-eight of Mr. Bachelder's deposition, MjjM Enterprises qualifies Mr. Bachelder's assertion in that Mr. Johansen told him that she could not hire him at that point.

not think it would be appropriate. PASMF ¶ 39; DRPASMF ¶ 39. Shortly after the

call, Ms. Johansen Facebook messaged with Mr. Bachelder and stated "I really meant

what I said today I want you part of the team. If I can help let me know." DSMF ¶

24; PRDSMF ¶ 24. Mr. Bachelder told Ms. Johansen that he was looking into options

for his teeth and had "started calling some places already. Hopefully it won't be long

until I can be part of the team." DSMF ¶ 25; PRDSMF ¶ 25. Ms. Johansen and Mr.

Bachelder concluded the Facebook exchange with the Ms. Johansen stating she would

look into things and get back to him. DSMF ¶ 26; PRDSMF ¶ 26.[15]

Mr. Bachelder understood from his discussions with Ms. Johansen that if he

had his bottom teeth repaired, whether replaced or removed, she would hire him for

the stylist position. DSMF ¶ 27; PRDSMF ¶ 27. Mr. Bachelder never followed up

with Ms. Johansen about having his teeth pulled or replaced and eventually had his

bottom teeth removed in 2017. DSMF ¶ 29; PRDSMF ¶ 29.

MjjM Enterprises' normal procedure when the decision is made not to hire

---

DRPASMF ¶ 38. The Court examined page thirty-eight of Mr. Bachelder's deposition and does not agree with MjjM Enterprises that the cited record supports its contention that Ms. Johansen told Mr. Bachelder that MjjM Enterprises could not hire him at that point. Furthermore, earlier in his deposition, Mr. Bachelder had testified that Ms. Johansen called him "a few hours later" to say she could not hire him because of his teeth and later than evening, had messaged him on Facebook to say that she was sorry she could not hire him but still wanted him as part of the team. *Bachelder Dep.* at 35:2-8.

The Court declines to accept MjjM Enterprises' qualified response. *See supra* footnotes three and four.

[15] MjjM Enterprises asserts, "Ms. Johansen and the Plaintiff concluded the exchange with the Plaintiff and Ms. Johansen investigating dental options for the Plaintiff's teeth." DSMF ¶ 26. Mr. Bachelder denies this. PRDSMF ¶ 26. He says, "[t]he call did not simply conclude with the exchange of the investigation of dental options for the Plaintiff's teeth. The call concluded with Johansen notifying Bachelder that after speaking with her supervisor the company had decided not to hire him." *Id.* MjjM Enterprises is referring to the Facebook message exchange between Mr. Bachelder and Ms. Johansen which took place after the phone call took place. The Court rejects Mr. Bachelder's denial and modifies MjjM Enterprises' version to conform with the record.

someone is to send a "no hire" letter to the applicant.  DSMF ¶ 30; PRDSMF ¶ 30.[16]

MjjM Enterprises never sent a "no hire" even though it decided not to hire Mr. Bachelder.  DSMF ¶ 31; PRDSMF ¶ 31.[17]

### E.    Maine Human Rights Commission

Following Mr. Bachelder's second interview on August 24, 2016, and before September 12, 2016, Mr. Bachelder obtained counsel to bring a claim against MjjM Enterprises.  DSMF ¶ 28; PRDSMF ¶ 28.  In December of 2016, MjjM Enterprises submitted its response to Mr. Bachelder's Maine Human Rights Commission (MHRC) complaint.  PASMF ¶ 40; DRPASMF ¶ 40.  In its MHRC submission, MjjM Enterprises asserted that for the first interview, Mr. Bachelder "wore sneakers, pants that were not well fitted, his hair was not properly styled, and Michael had an unpleasant body odor."  PASMF ¶ 41; DRPASMF ¶ 41.  MjjM Enterprises further asserted that for the second interview, Mr. Bachelder "arrived for the second interview in the same manner as the first interview."  PASMF ¶ 42; DRPASMF ¶ 42.

---

[16]    MjjM Enterprises states its normal procedure when a decision is made not to hire someone is to send a "no hire" letter to the applicant.  DMSF ¶ 30.  Mr. Bachelder admits that this may be MjjM Enterprises normal procedure but asserts that MjjM Enterprises deviated from that normal procedure with him.  PRDSMF ¶¶ 30-31.  There is a genuine dispute of material fact as to why Mr. Bachelder was not given a "no hire" letter by MjjM Enterprises.  However, MjjM Enterprises' statement of material fact paragraph thirty-one only refers to MjjM Enterprises' normal procedure for handling unsuccessful applicants.  Because Mr. Bachelder admits this assertion, the Court includes it.  The Court addresses Mr. Bachelder's contention that MjjM Enterprises deviated from its normal procedure in footnote seventeen.

[17]    MjjM Enterprises claims that it never sent a "no hire" letter to Mr. Bachelder because it was Ms. Johansen's understanding that Mr. Bachelder would follow up with her regarding his dental issues.  DSMF ¶ 31.  Mr. Bachelder denies this assertion.  PRDSMF ¶ 31.  Mr. Bachelder states that MjjM Enterprises "departed from the procedure regarding Bachelder given it decided not to hire him yet did not send out the subject letter" and that the record citation cited by MjjM Enterprises does not support its assertion.  *Id.*  There is a genuine dispute of material fact as to what Mr. Bachelder and Ms. Johansen discussed during their phone call regarding Mr. Bachelder's employment potential at MjjM Enterprises.  The Court adopts Mr. Bachelder's version of this event for the purposes of the summary judgment motion.  *See supra* footnote three.

MjjM Enterprises claimed that Ms. Johansen "did not express any concern with Michael's teeth, as he is alleging . . . [and] this is not a case of MJJM failing to hire Michael for the reason he alleges.  In fact, Michael was never rejected as an applicant."  PASMF ¶¶ 43-44; DRPASMF ¶¶ 43-44.

## III.  LEGAL STANDARD

For  summary judgment to be granted, the movant must show there is no genuine dispute of any material fact, and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis omitted).  Rather, a fact is "material" if it "has the potential to change the outcome of the suit."  *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010)).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The Court construes the record in the light most favorable to the nonmovant and makes all reasonable inferences in the nonmovant's favor as well.  *Braga v. Genlyte Grp., Inc.*, 420 F.3d 35, 38 (1st Cir. 2005).  A movant may "demonstrate[ ] an absence of evidence to support the nonmoving party's case."  *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The nonmoving party "must [then] adduce

specific facts showing that a trier of fact reasonably could find in his favor." *Id.* (citing *Anderson*, 477 U.S. at 249-50).

## IV.  POSITIONS OF THE PARTIES

### A.  MjjM Enterprises' Memorandum[18]

Citing American with Disabilities Act (ADA) standards, MjjM Enterprises says Mr. Bachelder cannot make out a prima facie case of discrimination under the MHRA. *Def.'s Mot.* at 5.  MjjM Enterprises does not dispute that Mr. Bachelder has a seizure disorder related to his epilepsy but argues that Mr. Bachelder has provided "no evidence to support his contention that [the] prescribed medication to treat the seizures caused the tooth decay and discoloration or that his seizure disorder substantially limits a major life activity." *Id.* at 6.  MjjM Enterprises asserts that when Mr. Bachelder was asked at his deposition whether any medical provider had ever informed him that his tooth decay was the result of medications for his seizure disorder, he testified that no doctor or dentist ever told him that the tooth decay was, in fact, caused by the medications." *Id.*  MjjM Enterprises maintains that Mr. Bachelder produced "no document or testimony to support his contention that seizure disorder medication caused tooth decay." *Id.*  MjjM Enterprises takes the position that "regardless of his personal beliefs," Mr. Bachelder must "produce evidence to support his contention that his tooth decay was caused by the medications and

---

[18]     Throughout its memorandum, MjjM Enterprises cites federal caselaw.  *Def.'s Mot.* at 5-10. MjjM Enterprises asserts that the analysis under the MHRA and federal law is the same, and that where "there exists an identity of purpose and objectives as between the Maine and federal provisions, reference to the latter in construing the former is entirely appropriate." *Id.* at 1 (quoting *Me. Human Rights Comm'n v. Kennebec Water Power Co.*, 468 A.2d 307, 310 (Me. 1983)).

therefore that MjjM Enterprises' decision to delay hiring him until his teeth were fixed is related to his alleged disability." *Id.*

MjjM Enterprises argues that Mr. Bachelder also has not provided any evidence that MjjM Enterprises regarded him as disabled. *Id.* at 7. MjjM Enterprises contends that it is Mr. Bachelder's burden to show MjjM Enterprises "regarded him as disabled within the meaning of the ADA." *Id.* at 8 (emphasis omitted) (quoting *Bearce v. City of Waterville*, No. 1:13-cv-00001-JDL, 2014 WL 4658720, at *10 (D. Me. Sept. 16, 2014) (quoting *Gómez–González v. Rural Opportunities, Inc.*, 626 F.3d 654, 664 (1st Cir. 2010))). MjjM Enterprises avers that Mr. Bachelder cannot sustain this burden considering that "Ms. Johansen also suffer[s] from seizures, but she invited him to two interviews after he informed her of his seizures, and she then expressed her desire to hire Bachelder if he addressed his decaying teeth." *Id.* MjjM Enterprises further claims that Mr. Bachelder cannot make out a prima facie case because he has not shown an adverse employment decision by MjjM Enterprises in that he has offered no evidence that his seizure disorder caused the poor condition of his teeth and that he was otherwise not hired due to his seizure disorder. *Id.* at 9.

MjjM Enterprises says that even if Mr. Bachelder can make out a prima facie case of disability discrimination, MjjM Enterprises had a legitimate nondiscriminatory business reason for not hiring him considering it has policies requiring that stylists maintain professional appearances while at work, and given the condition of Mr. Bachelder's teeth, it was reasonable to delay hiring Mr. Bachelder until he resolved the issues with his teeth, which he indicated he was

thinking of doing. *Id.* at 10. Because MjjM Enterprises offered a legitimate, nondiscriminatory business reason for not hiring Mr. Bachelder, MjjM Enterprises argues that it is entitled to summary judgment unless Mr. Bachelder "can "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (internal quotation marks omitted) (quoting *Vélez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 447-48 (1st Cir. 2009) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000))). MjjM Enterprises claims that Mr. Bachelder must go beyond the evidence he offers for his disability discrimination claim and that he failed to produce additional evidence that MjjM Enterprises' decision not to hire him was a pretext for disability discrimination. *Id.*

### B. Mr. Bachelder's Response

Mr. Bachelder says that he suffers from epilepsy which is a per se medical disability under the MHRA, and so he is in fact disabled under the MHRA. *Pl.'s Opp'n* at 1-2 (citing 5 M.R.S. § 4453-A(1)(B)). Mr. Bachelder argues that a "per se disability designation, regardless of its severity, 'is enough to get the Plaintiff past summary judgment on this (the first) element.'" *Id.* at 6 (quoting *Crosby v. F.W. Webb, Co.*, 2:12–cv–135–NT, 2014 U.S. Dist. LEXIS 40065 at *22-23. (D. Me. Mar. 26, 2014)). Mr. Bachelder dismisses MjjM Enterprises' argument that he must present evidence that his epilepsy medication caused the poor condition of his teeth as inaccurate under the MHRA, because in his view "epilepsy is a per se medical disability under *Section B.*" *Id.* Additionally, citing the statements of material fact, he contends that

there is evidence in the record that his epilepsy medication caused the poor condition of his teeth. *Id.* (citing DSMF ¶ 15, PSMF ¶¶ 3, 19).

Mr. Bachelder claims there is enough evidence on the record to reasonably infer that MjjM Enterprises "regarded Bachelder as having epilepsy . . . as Defendant concedes the point in its summary judgment motion where it asserts MjjM does not dispute whether Bachelder suffers from a seizure disorder, i.e. epilepsy . . .." *Id.* at 7 (internal quotation marks omitted) (quoting *Def.'s Mot.* at 6). Mr. Bachelder highlights various facts which he claims show that MjjM Enterprises knew of his epilepsy and his history of seizures, and which he says illustrates that he has met his burden to "allow[] for an inference that MjjM regarded Bachelder as having epilepsy within the meaning of the MHRA." *Id.* at 8-9.

Mr. Bachelder contends that MjjM Enterprises did take an adverse employment action against him because of his disability insofar as it was aware of his disability and did not hire him because of his disability. *Id.* at 9-10. Mr. Bachelder cites *Mahoney v. York Hospital*, No. PORSC-cv-13-73, 2014 WL 7920834, at *12 (Me. Super. Ct. Dec. 3, 2015), for the proposition that "a close temporal relationship between an employer's notice of an employee's disability and a subsequent adverse employment action is sufficient" to show that MjjM Enterprises engaged in an adverse action against Mr. Bachelder based on his disability. *Id.* at 10. He notes that MjjM Enterprises became aware that he suffered from epilepsy in July and August of 2016 and decided not to hire in on August 24, 2016. *Id.* at 10-11. Mr. Bachelder claims this is a close enough temporal relationship to show the causative element of

his disability discrimination claim. *Id.* at 11. He also posits that the record shows various other facts which confirm that "MjjM understood that Bachelder was a qualified cosmetologist, yet it refused to hire him because, simply put, it did not want to have to deal with his epilepsy and associated symptoms." *Id.*

As for MjjM Enterprises' argument that it had a legitimate, nondiscriminatory business reason for not hiring Mr. Bachelder, he says the record contradicts that it did not decide to delay its hiring him until he fixed his teeth. *Id.* at 12. Rather, Mr. Bachelder points to MjjM Enterprises' MHRA submission, where: "[it] claimed that [Ms.] Johansen did not express any concern with [Mr. Bachelder]'s teeth, as he . . . alleg[es] and this is not a case of MjjM failing to hire for the reason he alleges. In fact, Michael was never rejected as an applicant." *Id.*

Mr. Bachelder argues that the record before the Court could be reasonably construed as showing that MjjM Enterprises engaged in pretext in deciding not to hire him. *Id.* Mr. Bachelder says "[p]retext may be demonstrated through weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a fact finder could infer that the employer did not act for the asserted nondiscriminatory reasons." *Id.* at 13 (citing *Boyajian v. Starbucks Corp.*, 587 F. Supp. 295 (D. Me. 2008)). He cites disputed material facts such as MjjM Enterprises' claim that Mr. Bachelder was unprofessional looking in his interviews and had an "unpleasant body order" as a triable issue in which the jury could infer that MjjM Enterprises created a pretext for not hiring him. *Id.* at 13-14.

### C.    MjjM Enterprises' Reply

MjjM Enterprises disputes Mr. Bachelder's argument that because MjjM Enterprises does not dispute that he suffers from epilepsy, he does not need to show that epilepsy caused the poor condition of his teeth.  *Def.'s Reply* at 2.   MjjM Enterprises says that this argument "ignores the central issue that if the tooth decay and discoloration is unrelated to his epilepsy, any decision by MjjM based on the poor condition to his teeth was not because of his disability."  *Id.*  MjjM Enterprises contends that because Ms. Johansen, the MjjM Enterprises employee who conducted Mr. Bachelder's interview, also has epilepsy and expressed no concern over his seizure history, this suggests that it would not engaged in disability discrimination. *Id.* at 2-3.  MjjM Enterprises analogizes to the "same actor inference," where the entity or individual who hires an employee and then fires that same employee "is subject to a strong inference . . . that discrimination was not a determining factor for the adverse action."  *Id.* at 2 (quoting *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 847 (1st Cir. 1993)).  MjjM Enterprises reiterates its position that Mr. Bachelder must show that epilepsy caused the poor condition of his teeth.  *Id.* at 3.  It repeats that Mr. Bachelder has not offered any objective proof that his epilepsy medication caused the deterioration of his teeth and that his subjective beliefs are insufficient to sustain his burden.  *Id.*

MjjM Enterprises contends that Mr. Bachelder "cannot claim that MjjM [Enterprises] regarded him as disabled . . . [because] Ms. Johansen also suffer[s] from seizures, [and] she invited him to two interviews after he informed her of his seizures,

and she then expressed her desire to hire [him] if he addressed his decaying teeth." *Id.* at 4. It disputes Mr. Bachelder's contention that because MjjM Enterprises knew of his epilepsy that in turn means it "regarded" him as disabled. *Id.* MjjM Enterprises also posits that Mr. Bachelder's causal connection is lacking because "the record evidence shows that his epilepsy was not a factor or consideration in its decision [and he] has not and cannot even allege that anyone other than Ms. Johansen was aware of his epilepsy." *Id.* at 5.

Lastly, MjjM Enterprises claims that Mr. Bachelder concedes that it had a legitimate, nondiscriminatory basis for deciding to delay hiring him until he fixed his teeth. *Id.* It says that Mr. Bachelder acknowledged the professional appearance standards MjjM Enterprises expected of its stylists and that he "admitted he had planned on having his lower teeth removed." *Id.*

## V. DISCUSSION

### A. Disability Discrimination under the Maine Human Rights Act

The MHRA provides that "[t]he opportunity for an individual to secure employment without discrimination because of . . . physical or mental disability . . . is recognized as and declared to be a civil right." 5 M.R.S. § 4571. Pursuant to Section 4572(2), "[a] covered entity may not discriminate against a qualified individual with a disability because of the disability of the individual in regard to . . . the hiring [of that disabled individual.]" A covered entity is "an employer, employment agency, labor organization or joint labor-management committee." § 4553(1-B). A "qualified individual with a disability" is defined in part as a "an individual with a physical or

mental disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires." § 4553(8-D). Epilepsy is defined as a per se disability under the MHRA. § 4553-A(1)(B).

Since "the MHRA generally tracks federal anti-discrimination statutes, it is appropriate to look to federal precedent for guidance in interpreting the MHRA." *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 14 n.7, 824 A.2d 48 (alterations and internal quotation marks omitted); *see also Venable v. T-Mobile USA, Inc.*, 603 F. Supp. 2d 211, 213 n.2 (D. Me. 2009) (citing *Whitney v. Wal–Mart Stores, Inc.*, 2006 ME 37, 895 A.2d 309, *superseded by statute as stated in Rooney v. Sprague Energy Corp.*, 517 F. Supp. 2d 131, 134-35 (D. Me. 2007) ("Despite some differences between the Maine and federal acts, this interpretive principle remains viable particularly as regards congruent provisions of state and federal statutory law")).[19]

### 1. Prima Facie Case for Disability Discrimination

At oral argument on February 8, 2019, Mr. Bachelder clarified that his claim of disability discrimination is premised only on his epilepsy and he conceded that he could not adequately link the poor state of his teeth with his epilepsy medication. Nor is Mr. Bachelder claiming that his poor dental health provides a separate basis

---

[19]    In *Brady v. Cumberland County*, 2015 ME 143, ¶¶ 36-39, 126 A.3d 1145, the Law Court determined that it would no longer use the three-step, burden-shifting analysis for claims arising under Maine's Whistleblowers' Protection Act (26 M.R.S. §§ 831 *et seq.*). The Law Court has yet to dispense with the same burden-shifting framework for employment discrimination cases on summary judgment. *See Carnicella v. Mercy Hosp.*, 2017 ME 161, ¶ 16, n.2, 168 A.3d 768, *cert. denied*, 138 S. Ct. 1170 (2018) ("Because in this case we conclude that Carnicella did not present a prima facie case of employment discrimination, we do not reach the question of whether our analysis in *Brady* would apply to disability-based claims of employment discrimination"); *see Theriault v. Genesis Healthcare LLC*, 890 F.3d 342, 350-51 n.5 (1st Cir. 2018).

for claiming that MjjM Enterprises violated the MHRA.

MjjM Enterprises stated that it has understood Mr. Bachelder's disability discrimination claim to be premised on the poor state of his teeth allegedly caused by medication for his epilepsy. Although MjjM Enterprises conceded that epilepsy is a per se disability under the MHRA, it argued that Mr. Bachelder could not meet his prima facie burden because he could not establish MjjM Enterprises took an adverse action on account of his epilepsy. With these clarifications in mind, the Court turns to the merits of the parties' arguments as refined.

### a.    Legal Standard

Mr. Bachelder's sole claim against MjjM Enterprises is that it engaged in disability discrimination when it did not hire him as a hairstylist. Under the *McDonnell Douglas* burden shifting methodology, Mr. Bachelder carries the initial burden to establish a prima facie case of disability discrimination. "Pursuant to that analysis, 'an [applicant] must first establish a prima facie case that (1) he has a disability; (2) he is otherwise qualified, with or without reasonable accommodations, to perform the essential functions of [his] job; and (3) [his] [potential] employer adversely treated [him] based in whole or in part on [his] disability.'" *Carnicella*, 2017 ME 161, ¶ 16, 168 A.3d 768 (quoting *Daniels v. Narraquagus Bay Health Care Facility*, 2012 ME 80, ¶ 14, 45 A.3d 722) (quotation altered to apply to male job applicant)); *see also Swanson v. Correct Care Sols., Inc.*, No. 1:15-cv-383-GZS, 2017 WL 3275986, at *5 (D. Me. Aug. 1, 2017) (prima facia burden is "relatively light"), *report and recommendation adopted*, No. 1:15-cv-383-GZS, 2017 WL 3882507 (D. Me.

Sept. 5, 2017); *Ridge v. Cape Elizabeth Sch. Dept.*, 101 F. Supp. 2d 16, 18 (D. Me. 1999) (prima facie burden is "de minimis"). "If the [applicant] produces prima facie evidence of each element, the burden shifts to the [potential] employer to establish that it had a legitimate, nondiscriminatory basis for its actions; if the [potential] employer does so, 'the burden shifts back to the [applicant] to produce evidence that the [potential] employer's proffered reason is a pretext to conceal an unlawful reason for the adverse employment [decision].'" *Carnicella*, 2017 ME 161, ¶ 16, 168 A.3d 768 (quoting *Trott v. H.D. Goodall Hosp.*, 2013 ME 33, ¶ 15, 66 A.3d 7) (quotation altered to apply to male job applicant)).

MjjM Enterprises does not contest Mr. Bachelder suffers from epilepsy and is qualified to perform the essential functions of a stylist, with or without a reasonable accommodation. MjjM Enterprises disputes it subjected Mr. Bachelder to an adverse employment action on account of his disability.

### b.    Disability Analysis

Under the MHRA, Mr. Bachelder need not show his epilepsy substantially limits a major life activity. *See* 5 M.R.S. § 4553-A(1)(B) ("Physical or mental disability means . . . [w]ithout regard to severity unless otherwise indicated . . . epilepsy . . ..") (emphasis supplied; internal quotation marks omitted); *see also Kane v. VSI Meter Servs., Inc.*, No. 10–123–P–H, 2010 WL 1994790, at *1 n.2 (D. Me. May 17, 2010) (citing § 4553-A(1)(B)) (noting that per se disabilities like heart disease, are disabilities under MHRA "without regard to severity") (alterations in original)); *Rooney*, 519 F. Supp. 2d at 134 (discussing the 2007 legislative amendment that

resulted in the current statutory language).

In *Crosby*, a judge in this District addressed an analogous question involving alcoholism, one of the per se disabilities in section 4553A(1)(B). 2014 U.S. Dist. LEXIS 40065, at *22. Once the defendant conceded that the plaintiff suffered from alcoholism, the *Crosby* Court observed that "[t]his alone is enough to get the Plaintiff past summary judgment on this element" because alcoholism is statutorily a per se disability. In other words, the concession that a plaintiff has a per se disability under section 4553-A(1)(B) absolves the plaintiff from having to prove that the disability is one that "substantially limits one or more of a person's major life activities," "significantly impairs physical or mental health," or "requires special education, vocational rehabilitation or related services." § 4553-A(1)(A)(1-3).

### c.      Adverse Employment Action

### 1.      Analysis Without Pretext

"Determining whether an action is materially adverse necessarily requires a case-by-case inquiry." *Burnett v. Ocean Props., Ltd.*, 327 F. Supp. 3d 198, 234 (D. Me. 2018) (quoting *Blackie v. State of Me.*, 75 F.3d 716, 725 (1st Cir. 1996)). A claimant does not need to show that the adverse action was taken wholly because of one's disability, only that the adverse action was in part due to the claimant's disability. *See Doyle*, 2003 ME 61, ¶ 14, 824 A.2d 48 (citing *Gillen*, 283 F.3d at 20; *Soto–Ocasio v. Fed. Express Corp.*, 150 F.3d 14, 18 (1st Cir. 1998); *Lyons v. La. Pac. Corp.*, 217 F. Supp. 2d 171, 176–77 (D. Me. 2002)). "This burden can be carried with either direct evidence of discriminatory animus or with sufficient circumstantial evidence."

*Adams v. N. New England Tel. Operations*, L.L.C., No. CIV. 08-296-B-W, 2009 WL 2712970, at *11 (D. Me. Aug. 27, 2009).

MjjM Enterprises argues that Mr. Bachelder "cannot show his epilepsy was a factor, at all, in MjjM not hiring him." *Def.'s Reply* at 5 (citing *Ramirez Rodriguez v. Boehringer Ingelheim Pharm., Inc.*, 425 F.3d 67, 85 (1st Cir. 2005)). MjjM Enterprises says "the record evidence shows that his epilepsy was not a factor or consideration in MjjM's decision. Bachelder has not and cannot even allege that anyone other than Ms. Johansen was aware of his epilepsy." *Id.* Mr. Bachelder counters that "[c]onsistent with the relevant caselaw, the record, in the present case, contains evidence of a sufficiently close temporal relationship to satisfy the causal link requirement." *Pl.'s Opp'n* at 10. Mr. Bachelder references various pieces of evidence which he says, in its totality, "allows for a reasonable inference that MjjM understood that Bachelder was a qualified cosmetologist, yet it refused to hire him because, simply put, it did not want to have to deal with his epilepsy and associated symptoms." *Id.* at 11.

Refusing to hire an individual is a material adverse employment action. *See Gillen*, 283 F.3d at 29. Mr. Bachelder claims he was not hired because MjjM Enterprises "did not want to have to deal with his epilepsy and associated symptoms." *Pl.'s Opp'n* at 11. Mr. Bachelder contends that the "close temporal relationship between [MjjM Enterprises'] notice of [Mr. Bachelder's] disability and a subsequent adverse employment action is sufficient to satisfy the casual link requirement . . .." *Id.* at 10. In his supplemental memorandum in opposition to MjjM Enterprises'

motion for summary judgment, Mr. Bachelder reiterates this position and says his case is "closely analogous" to *Mahoney*, 2014 WL 7920834, where the Superior Court of Maine for Cumberland County extended the Law Court's reasoning in *Daniels* of close temporal proximity between an employer's awareness of a protected activity and a retaliatory action to establish the casual link necessary for a retaliation claim to a disability discrimination context. *Pl.'s Suppl. Mem.* at 2 (citing at *Mahoney*, 2014 WL 7920834, *4-5).

Mr. Bachelder's argument about the temporal relationship between MjjM Enterprises' discovery of his epilepsy and its decision not to hire him is not as persuasive in the hiring context as in other contexts. Maine law has long held that a "[t]emporal proximity of an employer's protected activity and the alleged retaliatory action may serve as the causal link for purposes of a prima facie case." *Daniels*, 2012 ME 80, ¶ 21, 45 A.3d 722; *Doyle*, 2003 ME 61, ¶ 20, 824 A.2d 48; *DiCentes v. Michaud*, 719 A.2d 509, 514-15 (Me. 1998). These cases, however, addressed situations where an employee had been uneventfully employed and suffered an employer's adverse action on the heels of engaging in protected activity.

*Mahoney* is an example. In *Mahoney*, the plaintiff worked without issue at York Hospital before wearing hearing aids, but within two months after she started wearing hearing aids, her employer took an adverse employment action against her. *Mahoney*, 2014 WL 7920834, at *1-5.

In the context of an application for employment, however, the employer's decision not to hire is almost always temporally close to the application. If temporal

proximity between application and rejection is evidence of discriminatory motive sufficient to sustain a plaintiff's prima facie burden of proof, a discontented applicant could sustain the prima facie burden in virtually every lawsuit based on a temporal proximity present in nearly all employment applications. Logically, there may be circumstances where application of the temporal proximity rule to an employment application would be appropriate, such as where an application is proceeding well until the employer becomes aware of the applicant's disability. But here, Mr. Bachelder informed MjjM Enterprises at the outset that he suffered from epilepsy and, yet, MjjM Enterprises proceeded with his application through the second step. Accordingly, it is difficult to credit the temporal closeness between the application and the refusal to hire as convincing evidence of discrimination.

This does not end the matter. The Court disagrees with MjjM Enterprises that the record conclusively indicates only Ms. Johansen was aware of Mr. Bachelder's epilepsy. Although Mr. Bachelder primarily interacted with Ms. Johansen as part of the hiring process, Ms. Johansen told Mr. Bachelder that she would need to speak to her supervisor about hiring him, and after doing so, Ms. Johansen told Mr. Bachelder that her supervisor did not think it "appropriate to hire him." Mr. Bachelder had already discussed his history of seizures, tattoos, and piercings with Ms. Johansen to make sure they would not pose a problem. It is a reasonable inference that Ms. Johansen discussed all these matters with her supervisor, including Mr. Bachelder's history of seizures, to determine whether to hire Mr. Bachelder. Therefore, at least one other individual at MjjM Enterprises, plausibly knew that Mr. Bachelder suffers

from epilepsy.

The Court is also concerned about the stated explanation from MjjM Enterprises, namely that hiring Mr. Bachelder would not be "appropriate." It is, in the Court's view, an odd reason to give not to hire someone. "Appropriate" means "suitable or fitting for a particular purpose." STUART BERG BLEXNER AND LEONORE CRARY HAUCK, THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE, at 103 (2d ed. 1987). This explanation is as significant for what it does not say as for what it says. MjjM Enterprises did not say that it would not hire Mr. Bachelder because he could not do the job. To the contrary, all indications are that Mr. Bachelder is a competent hairstylist; he successfully passed the haircut test and Ms. Johansen praised him for the result. Nor did MjjM Enterprises say that it would not hire Mr. Bachelder because there were no positions available. A fair reading of the record is that a position was open at MjjM Enterprises.

If there was a job opening and if Mr. Bachelder was competent to do the job, it would have not been "appropriate" to hire him only because of something about him that made him unsuitable for MjjM Enterprises. The record reveals only two possible factors: his teeth and his epilepsy. The record reveals that Mr. Bachelder was unable to attend his first interview for three weeks while he recovered from an epileptic seizure. Mr. Bachelder and Ms. Johansen discussed his epilepsy during the first interview. In response to her statement that he might be required to work in different Supercuts stores, Mr. Bachelder informed Ms. Johansen that, due to his epilepsy, he could not drive a car. Upon completing the haircut demonstration at the second

interview, Mr. Bachelder thought "everything was good at that point." However, a few hours later, after Ms. Johansen discussed hiring Mr. Bachelder with her supervisor, hiring Mr. Bachelder was not deemed not to be appropriate.

It is also possible that MjjM Enterprises was reluctant to hire Mr. Bachelder because of the poor condition of his teeth. As Mr. Bachelder conceded the issue at oral argument, if MjjM Enterprises rejected Mr. Bachelder because of his dental health, he is not claiming that MjjM Enterprises violated the MHRA in doing so. A third possibility is that it was a combination of his epilepsy and dental health that made hiring Mr. Bachelder inappropriate. If so, Mr. Bachelder has established a prima facie case of discrimination.

With this record, though it is a close question, the Court concludes there is a triable issue of fact as to whether MjjM Enterprises did not hire Mr. Bachelder, at least in part, due to his epilepsy. Mr. Bachelder's prima facie burden is not "onerous", *Manicini v. City of Providence*, 909 F.3d 32, 39 (1st Cir. 2018) (citation omitted), and taking the facts in the light most favorable to Mr. Bachelder's theory of the case consistent with the record, Mr. Bachelder has presented enough evidence to raise a genuine issue of material fact as to whether MjjM Enterprises did not hire him due to his disability.

## 2. Analysis With Pretext

At oral argument, Mr. Bachelder argued that the Court may consider evidence of pretext in evaluating whether he had met his initial prima facie burden, and in his supplemental memorandum, in support of this position, he cited *Hersh v.*

*Manufacturers and Traders Trust Co.*, 2016 U.S. Dist. LEXIS 70785, *33-34 (E.D. Penn. May 31, 2016). *Pl.'s Suppl. Mem.* at 5. However, it is not clear if the District Court for the Eastern District of Pennsylvania considered evidence of pretext in analyzing whether the plaintiff had satisfied her prima facie burden. The *Hersh* Court focuses on the employer's hypercriticism of the employee in the months after she informed them that she had been diagnosed with cancer. *Hersh* strikes the Court as a temporal causation case.

Mr. Bachelder presents an uncertain issue of Maine law. In *Brady*, the Law Court stated, "[w]hen considering whether a plaintiff has produced evidence sufficient to establish . . . causation, the court may consider any and all evidence that tends to show a causal link, even if that evidence would also be relevant to show pretext at the third stage of the *McDonnell Douglas* framework." 2015 ME 143, ¶ 16, 126 A.3d 1145. However, *Brady* concerned a claim for employment retaliation brought pursuant to the Maine Whistleblowers' Protection Act (WPA) and its holding dispensed with the *McDonnell Douglas* shifting burden framework for suits brought under the Maine WPA. As previously mentioned, in *Carnicella*, the Law Court did not clarify whether its *Brady* analysis is applicable to disability-based claims of employment discrimination. 2017 ME 161, ¶ 16 n.2, 168 A.3d 768.

Other courts have expressed the view that a court may consider evidence of pretext at the prima facie stage of the *McDonnell Douglas* framework. *See Emeldi v. Univ. of Or.*, 698 F.3d 715, 729 (9th Cir. 2012) ("Emeldi has presented evidence from which a reasonable jury could conclude that the University's account is pretextual.

For substantially the same reasons we concluded that Emeldi proffered sufficient evidence of causation, we likewise conclude that Emeldi's evidence is sufficient to show pretext") (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir, 2000)); *Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003) ("[W]e agree with the Third Circuit that evidence of pretext can be useful in multiple stages of a Title VII retaliation claim"); *Farrell*, 206 F.3d at 280-81 ("Although timing and ongoing antagonism have often been the basis for the causal link, our case law has allowed a plaintiff to substantiate a causal connection for purposes of the prima facie case through other types of circumstantial evidence that support the inference. For example, a plaintiff may establish the connection by showing that the employer gave inconsistent reasons for terminating the employee").

The parties cited no First Circuit case directly on point. The First Circuit has concluded that the ADA and Title VII are similarly interpreted. *EEOC v. Amego, Inc.*, 110 F.3d 135, 145 n.7 (1st Cir. 1997) ("The ADA is interpreted in a manner similar to Title VII, and courts have frequently invoked the familiar burden-shifting analysis of *McDonnell Douglas* in ADA cases"). The Court found one case, *Soto-Feliciano v. Villa Cofresí Hotels, Inc.*, 779 F.3d 19 (1st Cir. 2015), where the First Circuit, dealing with a retaliation claim, moved directly from the plaintiff's prima facie case and addressed whether the employee had raised a genuine issue of material fact as to whether the defendant's "stated grounds for firing him were in fact a pretext for retaliatory animus." *Id.* at 32. Having concluded that the employee proved the higher showing of pretext, the First Circuit wrote that the employee "necessarily met

the lesser burden that he bears at the prima facie stage of showing a causal connection between his protected conduct and the decision to fire him." *Id.* (citing *Wells*, 325 F.3d at 1218 (quoting *Farrell*, 206 F.3d at 286)).

The *Soto-Feliciano* Court's ruling suggests that the First Circuit approves generally of the *Wells* and *Farrell* holdings and, if so, it is less of a leap to conclude that Maine courts might do the same when interpreting the MHRA.[20] *But see Scarborough v. Nestle Waters North Am., Inc.*, No. 07-cv-193-P-S, 2008 U.S. Dist. LEXIS 105815, at *32 (D. Me. Oct. 30, 2008) ("The First Circuit has said that '[a]n employer's different and arguably inconsistent explanations for its challenged employment action can serve as evidence of pretext, but not that this can also serve as evidence of a causal connection between protected activity and an adverse employment action"). This is particularly true because even though the Maine Supreme Judicial Court has not extended *Brady*, 2015 ME 143, 126 A.3d 1145, beyond whistleblower cases, it has shown a willingness not to strictly construe the *McDonnell Douglas* burden-shifting analysis.

Moreover, "the ultimate touchstone of the *McDonnell Douglas* analysis is whether the employer's actions were improperly motivated by discrimination," *Kosereis v. Rhode Island*, 331 F.3d 207, 213 (1st Cir. 2003) (internal quotation marks and citation omitted), and the *McDonnell Douglas* framework was "never intended to

---

[20]    With this said, the Maine Supreme Judicial Court and the Court of Appeals for the First Circuit are not always in sync. *Compare Brady*, 2015 ME 143, ¶¶ 36-37, 126 A.3d 1145 and *Carnicella*, 2017 ME 161, ¶ 16 n.2, 168 A.3d 768, *with Theriault*, 890 F.3d at 350-51 n.5 ("There is a puzzling footnote in *Carnicella*, which refers to the 'first of three steps' in the analytic framework. But *Carnicella* is not itself a WPA retaliation case, and in all events the footnote is dictum. Thus, we do not attempt to decipher the meaning of the *Carnicella* footnote").

be rigid, mechanized or ritualistic." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978).

If evidence is relevant at two stages of an inquiry designed to determine whether there was unlawful discrimination, it would be counterintuitive to confine the consideration of evidence to specific stages of the inquiry. At the same time, the Court is mindful that it should "tread lightly in offering interpretations of state law where controlling precedent is scarce." *Noonan v. Staples, Inc.*, 556 F.3d 20, 30 (1st Cir. 2009).

Because the Court concluded that Mr. Bachelder inched by his burden to prove a prima facie case against MjjM Enterprises without evidence of pretext, the Court need not definitively rule as to whether he could point to evidence of pretext to sustain his prima facie burden. But if evidence of pretext may be considered for purposes of the prima facie case under the MHRA, Mr. Bachelder easily sustains his burden and, for that matter, readily defeats MjjM Enterprises' motion for summary judgment.

MjjM Enterprises proffered several conflicting reasons for why Mr. Bachelder was not hired. In a letter dated December 21, 2016 to the MHRC, MjjM Enterprises stated that it never rejected Mr. Bachelder as an applicant, and that in his two interviews, Ms. Johansen found Mr. Bachelder did not comply with MjjM Enterprises' professional appearance standards in that he "wore sneakers, pants that were not well fitted, his hair was not properly styled and Michael had an unpleasant body odor." PASMF ¶ 41; DRPASMF ¶ 41. MjjM Enterprises stated Ms. Johansen "did not express any concern with [Mr. Bachelder's] teeth, as he is alleging. PASMF ¶ 43;

DRPASMF ¶ 43.  MjjM Enterprises explained "[t]his is not a case of MjjM failing to hire [Mr. Bachelder] for the reasons he alleges.  In fact [Mr. Bachelder] was never rejected as an applicant."  PASMF ¶ 44; DRPASMF ¶ 44.

In its motion for summary judgment, however, MjjM Enterprises said that it "delayed hiring [Mr.] Bachelder until he fixed his teeth."  *Def.'s Mot.* at 9.  MjjM Enterprises further explained in asserting its legitimate, nondiscriminatory business reason, that "[t]he simple fact is that a stylist with decaying, discolored teeth is not consistent with a 'professional appearance' and thus not consistent with MjjM's stylist guidelines."  *Id.*  Mr. Bachelder presented his testimony and his stepson's testimony to show that he was dressed professionally when he met with Ms. Johansen, contrary to MjjM Enterprises' MHRC assertion and the Court is required to accept Mr. Bachelder's and Mr. Self's recollection over MjjM Enterprises' conflicting evidence.  While MjjM Enterprises maintains it did not hire Mr. Bachelder pursuant to its professional appearance standards, the reason it viewed Mr. Bachelder as failing to comply with those standards has changed over time.

If considered as part of Mr. Bachelder's prima facie case, MjjM Enterprises' conflicting and personally insulting (unpleasant body odor) reasons for not hiring him, when combined with other evidence, easily sustain Mr. Bachelder's prima facie burden under *McDonnell Douglas.*

### 2. Legitimate, Nondiscriminatory Reason for Not Hiring Mr. Bachelder

Once Mr. Bachelder made out a prima facie case, "the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its

employment decision." *Burnett*, 327 F. Supp. 3d at 233 (citations omitted). "The employer's burden of articulating a nondiscriminatory reason is a burden of production, not a burden of persuasion; the burden of proving unlawful discrimination rests with the plaintiff at all times." *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 99 (1st Cir. 2007); *see also Daniels*, 2012 ME 80, ¶ 28, 45 A.3d 722 (Silver, J., concurring) (noting that the burden of production is not a determination of credibility or which party has stronger evidence).

MjjM Enterprises claims that it delayed hiring Mr. Bachelder until he fixed his teeth. *Def.'s Mot.* at 9-10; *Def.'s Reply* at 5. MjjM Enterprises said it did so to allow Mr. Bachelder time to comply with MjjM Enterprises' professional appearance guidelines and "that a stylist with decaying, discolored teeth is not consistent with a 'professional appearance . . ..'" *Def.'s Mot.* at 9. Mr. Bachelder responds that MjjM Enterprises' asserted legitimate, nondiscriminatory basis for not hiring him is belied by the "balance of the record" and that it stated a different reason for why Mr. Bachelder was not hired in its MHRC submission. *Pl.'s Opp'n* at 12. Mr. Bachelder's arguments go toward the persuasiveness and the credibility of MjjM Enterprises' asserted legitimate, nondiscriminatory business reason. MjjM Enterprises has adequately offered a legitimate, nondiscriminatory business reason for its adverse employment action.

### 3. Pretext or Discriminatory Animus

The burden shifts back to Mr. Bachelder to show that MjjM Enterprises' nondiscriminatory justification was a mere pretext, cloaking a discriminatory

animus. *See McDonnell Douglas,* 411 U.S. at 804; *see also Cookson v. Brewer Sch. Dept.,* 2009 ME 57, ¶ 16, 974 A.2d 276 ("[T]he employee can survive a motion for summary judgment by presenting sufficient evidence from which a fact-finder could determine that either (1) the circumstances underlying the employer's articulated reason are untrue, or (2) even if true, those circumstances were not the actual cause of the employment decision") (internal quotation marks and citation omitted)).  Mr. Bachelder "must . . . produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated reason for its adverse action was a pretext and whether the real reason was disability discrimination." *Trafton v. Sunbury Primary Care, P.A.,* 689 F. Supp. 2d 180, 196 (D. Me. 2010) (quoting *Quinones v. Buick,* 436 F.3d 284, 290 (1st Cir. 2006)).  "One way a plaintiff can establish pretext is by showing weaknesses, inconsistencies and contradictions in the employer's proffered legitimate reasons for termination." *Id.* at 197 (citing *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 56 (1st Cir. 2000)).  Different and inconsistent explanations at different times for why an adverse employment action was taken may lead a jury to infer that the asserted nondiscriminatory reason for the adverse action was pretextual.  *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 432 (1st Cir. 2000); *see also Donahue v. Clair Car Connection, Inc.,* 736 F. Supp. 2d 294, 317 (D. Me. 2010) (shifting explanations shows evidence of pretext).

MjjM Enterprises says that Mr. Bachelder only has the same evidence to show its rationale for not hiring him was pretextual as he has for his prima facie case, which it asserts is insufficient.  *Def.'s Mot.* at 10.  In response, Mr. Bachelder

highlights various pieces of evidence—MjjM Enterprises previously claiming that it did not hire Mr. Bachelder because he was not dressed professionally at his interviews and was not concerned with the appearance of his teeth, its prior claim that he never rejected Mr. Bachelder as an applicant—demonstrates that MjjM Enterprises' basis for not hiring him was pretextual *Pl.'s Opp'n* at 13 (citation omitted).

Taking all reasonable inferences in favor of the nonmovant, the Court concludes that Mr. Bachelder has met his burden to show a triable issue as to if MjjM Enterprises' asserted nondiscriminatory basis for not hiring him was a mere pretext. As such, there is a genuine issue of material fact whether MjjM Enterprises discriminated against Mr. Bachelder because of his disability.

## VI.  SUMMARY

Although the Court is denying MjjM Enterprises' motion for summary judgment, the motion has substantially narrowed the issues in the case.  First, Mr. Bachelder confirmed that he is not claiming that if MjjM Enterprises refused to hire him because of the poor condition of his teeth, it violated the MHRA.  Second, Mr. Bachelder also withdrew his earlier-pressed claim that the medication he has taken for his epilepsy caused his teeth to deteriorate.  Mr. Bachelder is left with one contention against MjjM Enterprises, namely that MjjM Enterprises did not hire him because of his epilepsy, a per se disability under the MHRA.

## VII.  CONCLUSION

The Court DENIES Defendant's Motion for Summary Judgment (ECF No. 28).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 25th day of February, 2019